IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-17

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CHRISTOPHER LEE HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |

On September 30, 2025, Christopher Lee Hernandez ("Hernandez" or "defendant"), proceeding pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2019) (codified as amended at 18 U.S.C. § 3582) [D.E. 223] and filed an exhibit [D.E. 223-1]. On March 2, 2026, the United States responded in opposition to Hernandez's motion for compassionate release [D.E. 228] and filed exhibits and an affidavit [D.E. 228-1, 229].

I.

On May 22, 2017, with a written plea agreement, Hernandez pleaded guilty to conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine (count one) and possession of a firearm in furtherance of a drug trafficking crime (count three). See [D.E. 69, 78–79]. On February 8, 2018, the court held Hernandez's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 95]. The court calculated Hernandez's total offense level to be 33, his criminal history category to be III, and his advisory guideline range on count one to be 168 to 210 months' imprisonment and on count two to be 60 months' consecutive imprisonment. See PSR ¶¶ 60–72; [D.E. 134] 1. After

granting the government's motion for a downward departure and considering all arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Hernandez to 96 months' imprisonment on count one and 60 months' consecutive imprisonment on count two for a total of 156 months' imprisonment. See [D.E. 130]; [D.E. 133] 3. Hernandez did not appeal.

On September 30, 2025, Hernandez, proceeding pro se, moved for compassionate release and a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) [D.E. 223] and filed an exhibit [D.E. 223-1]. The United States opposes the motion [D.E. 228] and filed exhibits and an affidavit [D.E. 228-1, 229].

II.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021). But if the government does timely raise the defense, the defendant's failure to exhaust "presents a glaring roadblock foreclosing compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); see United States v. Alam, 960 F.3d 831, 833–36 (6th Cir. 2020).

The United States argues that the court must deny Hernandez's motion for compassionate release because Hernandez failed to exhaust his administrative remedies. See [D.E. 228] 11–12. The United States offers a declaration by Christina Kelley ("Kelley"), a Supervisory Attorney with the Federal Bureau of Prisons ("BOP"). See [D.E. 229] ¶ 1. Kelley declares that Hernandez has

2

only filed two requests for administrative remedies while incarcerated: (1) an appeal submitted to the Northeast Regional Office on August 8, 2022, about a Discipline Hearing Officer report; and (2) an administrative remedy request submitted to the Southeast Regional Office on September 16, 2025, about an alleged assault. See id. ¶ 6. Kelley declares that no records indicate that Hernandez made any requests for compassionate release, and staff at the United States Penitentiary in Allenwood, Pennsylvania ("USP Allenwood") (Hernandez's current penitentiary) confirmed this information. See id. ¶¶ 6–7. Thus, Hernandez failed to exhaust all administrative rights, and the court denies Hernandez's motion for compassionate release. See 18 U.S.C. § 3582(c)(1)(A); Ferguson, 55 F.4th at 268 (4th Cir. 2022); Raia, 954 F.3d at 597; Alam, 960 F.3d at 833–36.

## III.

Alternatively, the court denies Hernandez's motion for compassionate release on the merits. A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion,

3

those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See United States v. Washington, 161 F.4th 816, 818 (4th Cir. 2025); Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024); McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. U.S.S.G. § 1B1.13(e).

Hernandez seeks compassionate release under section 3582(c)(1)(A). See [D.E. 223] 1. In support, Hernandez argues extraordinary and compelling circumstances exist. First, Hernandez alleges an "injury to [his] left eye," which causes blurred vision, headaches, dizziness, and extreme

4

pain. Id. at 5. Second, Hernandez alleges that BOP staff sexually and physically assaulted him. See id. at 5–6. Third, Hernandez states that his 10-year-old son is in foster care, and Hernandez is the "only person available to care for his son and remove him from foster care." Id. at 7. Lastly, Hernandez cites his youth at the time of the crime, his status as a gang dropout, and his cooperation in an investigation of BOP staff and their alleged attempt to kill Robert Sylvester Kelly. See id. at 4–5, 7.

As for Hernandez's medical circumstances, the policy statement requires, in relevant part, that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" or that the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(B)–(C). Hernandez (age 30) states that he suffers from an injury to his left eye, which results in blurred vision, headaches, dizziness, and extreme pain. See [D.E. 223] 5. Hernandez does not allege that he cannot provide self-care for himself or that he cannot recover from his eye injury. See id.; cf. U.S.S.G. § 1B1.13(b)(1)(B). Instead, Hernandez alleges that he has not received medical care for his eye injury. See [D.E. 223] 5. But BOP records indicate that Hernandez has not complained of an eye injury despite seeking medical treatment for other ailments. For example, on January 27, 2026, a BOP doctor evaluated Hernandez for asthma, gastro-esophageal reflux issues, abdominal pain, and hemorrhoids, but Hernandez did not complain about an eye injury, eye pain, blurred vision, headaches, or dizziness. See [D.E. 228-1] 1–2. Hernandez's failure to mention his eye injury during his most recent evaluation undermines his credibility and the alleged eye injury. Furthermore, even if BOP medical staff refused to treat

5

Hernandez's eye injury, Hernandez does not allege that this eye injury requires long-term or specialized treatment or that without treatment, a serious deterioration in his health or death may occur. Cf. U.S.S.G. § 1B1.13(b)(1)(C). Thus, Hernandez fails to demonstrate that his condition inhibits his ability to provide self-care in his correctional facility or that he is not being provided adequate medical care in custody. See, e.g., United States v. Worrell, No. 6:24-CR-552, 2025 WL 3268305, at *3–4 (D.S.C. Nov. 24, 2025) (unpublished); United States v. Barnhart, 704 F. Supp. 3d 679, 682–85 (W.D. Va. 2023). Accordingly, reducing Hernandez's sentence because of his alleged medical condition does not comport with U.S.S.G. § 1B1.13(b)(1)(B)–(C).

As for Hernandez's abuse allegations, under section 1B1.13(b)(4), the defendant must suffer (1) "sexual abuse involving a 'sexual act'" or (2) "physical abuse resulting in 'serious bodily injury.'" The term "sexual act" means (A) "contact between the penis and the vulva or the penis and the anus," (B) "contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus," (C) penetration "of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," and (D) "the intentional touching, not through the clothing, of the genitalia of another person . . . with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(A)–(D) (emphasis added); see 1B1.13(b)(4)(A) (directing the court to omit the age limitation in 18 U.S.C. § 2246(2)(D) to define a sexual act under U.S.S.G. § 1B1.13(b)(4)(A)). The term "serious bodily injury" means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." Application Note 1(L) to U.S.S.G. § 1B1.1.

6

Hernandez fails to allege that he suffered sexual abuse involving a sexual act or physical abuse causing serious bodily harm. As for a sexual act, Hernandez alleges that BOP staff "squeezed and kicked" his testicles, resulting in a sexual assault. [D.E. 223] 5. But Hernandez does not allege that BOP staff squeezed or kicked his bare testicles. And "sexual act" does not cover intentional touching "through the clothing." Cf. 18 U.S.C. § 2246(2)(D). Thus, BOP staff allegedly kicking and squeezing Hernandez's testicles while clothed does not satisfy section 1B1.13(b)(4)(A). As for serious bodily injury, Hernandez was evaluated after his alleged sexual assault, and the doctor reported that "[t]he testicle and penis appear[ed] normal, with no swelling, no bruising, no erythema, and no visible signs of trauma." [D.E. 228-1] 8. Furthermore, Hernandez displayed no signs of distress or pain. See id. With no pain, no impairment of a bodily member, and no need for medical intervention, Hernandez does not satisfy U.S.S.G. § 1B1.13(b)(4)(B).

Alternatively, even if Hernandez satisfied the definition of "sexual act" or "serious bodily harm," under section 1B1.13(b)(4), Hernandez also must show that the abuse was "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant." See U.S.S.G. § 1B1.13(b)(4). And "the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." Id.

Hernandez has failed to establish sexual abuse or physical abuse by a criminal case, an admission of liability in a civil case, or a finding in an administrative proceeding. Rather, Hernandez argues that he is in "imminent danger." See [D.E. 223] 6. But Hernandez's alleged abuse took place at Federal Correctional Institution (FCI) Coleman, and Hernandez is now housed

7

at USP Allenwood. Compare id. at 5, with Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (search by inmate number 30770-057). Given that Hernandez is incarcerated at a "separate federal facility in another state," there is "no allegation that he is in imminent danger at his present facility." United States v. Gadson, No. 2:19-CR-122, 2025 WL 1000991, at *15 (D. Me. Apr. 3, 2025) (unpublished); see United States v. Rossignol, No. 1:14-CR-33, 2024 WL 2059223, at *2 (D. Me. May 8, 2024) (unpublished). Thus, Hernandez's alleged sexual abuse and physical abuse does not satisfy section 1B1.13(b)(4).

As for family circumstances, under section 1B1.13(b)(3)(A), "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition" may be considered an extraordinary and compelling reason. U.S.S.G. § 1B1.13(b)(3)(A). Hernandez alleges that his son is currently in foster care, and Hernandez is the sole caregiver. See [D.E. 223] 7. Placing a minor child in foster care means that the child has a valid caregiver; therefore, Hernandez must present evidence of some deficiency in the foster care placement to support incapacitation. See, e.g., United States v. Willis, No. CR 22-153 (DWF/JFD), 2024 WL 4452134, at *2 (D. Minn. Oct. 9, 2024) (unpublished); United States v. Clayton, No. 2:18-CR-52-TBM-MTP, 2023 WL 4939380, at *3–4 (S.D. Miss. Aug. 2, 2023) (unpublished), aff'd, No. 23-60443, 2024 WL 64762 (5th Cir. Jan. 5, 2024) (per curiam) (unpublished); United States v. Montgomery, No. 5: 17-082-DCR, 2020 WL 6491653, at *2 (E.D. Ky. Nov. 4, 2020) (unpublished). Furthermore, Hernandez must demonstrate that he has parental rights or provide evidence that he would regain custody upon release and be a suitable caregiver. See United States v. Gant, No. 3:20-CR-28 JD, 2024 WL 1879567, at *3 (N.D. Ind. Apr. 29, 2024) (unpublished); United States v. Ray, No. 3:19-CR-46, 2023 WL 3411024, at *3–4 (N.D. Ind. May 12, 2023)

8

(unpublished); United States v. Fields, 569 F. Supp. 3d 231, 240–42 (E.D. Pa. 2021); United States v. Ramos, No. CR12-4101-LTS, 2021 WL 4507464, at *4–5 (N.D. Iowa Oct. 1, 2021) (unpublished); United States v. Dawkins, No. CR 08-412, 2021 WL 1946662, at *3–4 (W.D. Pa. May 14, 2021) (unpublished); United States v. Paul, No. 18-CR-227, 2020 WL 5807343, at *2 (S.D. W. Va. Sept. 25, 2020) (unpublished); United States v. Johnson, No. 1:15-CR-59, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (unpublished).

Hernandez alleges that he is the "only person available to care for his son and remove him from foster care to build a relationship." [D.E. 223] 7. But Hernandez provides no evidence that the foster care placement is deficient. See Willis, 2024 WL 4452134, at *2; Clayton, 2023 WL 4939380, at *3–4; Montgomery, 2020 WL 6491653, at *2. Furthermore, Hernandez "waived his parental rights . . . so that his aunt and uncle could have custody of" his son, and Hernandez offers no evidence that he could regain custody of his son upon release and be a suitable caregiver. Thus, Hernandez does not satisfy section 1B1.13(b)(3)(A). See Gant, 2024 WL 1879567, at *3; Ray, 2023 WL 3411024, at *2; Fields, 569 F. Supp. 3d at 240; Ramos, 2021 WL 4507464, at 4–5; Dawkins, 2021 WL 1946662, at *3; Paul, 2020 WL 5807343, at *2; Johnson, 2020 WL 6075867, at *5.

As for the "other reasons" policy statement, Hernandez alleges that the following amount to extraordinary and compelling reasons: his youth at the time of the crime, his status as a gang dropout, and his cooperation in an investigation of BOP staff and their alleged attempt to kill Robert Sylvester Kelly. See [D.E. 223] 4–5, 7. Most of Hernandez's "other reasons" are factors that the court considers under 18 U.S.C. § 3553(a), not extraordinary and compelling reasons that satisfy U.S.S.G. § 1B1.13(b)(5). And although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence

9

reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 at n.9. Furthermore, since Hernandez's BOP incarceration, he has incurred 12 infractions—the most recent of which occurred five months ago. See [D.E. 228-3]. Thus, Hernandez does not satisfy section 1B1.13(b)(5), and he fails to allege an extraordinary and compelling reason under section 3582(c)(1)(A).

Alternatively, even if Hernandez sufficiently alleged an extraordinary and compelling reason under section 3582(c)(1)(A), the section 3553(a) factors counsel against granting Hernandez's motion for compassionate release. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32. Hernandez is 30 years old and engaged in serious criminal conduct. See PSR ¶¶ 11–15. On September 22, 2016, the United States Drug Enforcement Administration ("DEA") used a confidential informant ("CI") to arrange a purchase of methamphetamine from Hernandez. See id. ¶ 11. Hernandez (then a member of the SUR-13 street gang) agreed to sell the CI five pounds of methamphetamine in exchange for $50,000. See id. On September 23, 2016, the CI met Hernandez in a department store parking lot in Clayton, North Carolina. See id. The CI approached Hernandez's passenger door and made contact with Hernandez. See id. ¶ 13. After making contact, the CI returned to his vehicle and exited the parking lot. See id. Hernandez followed closely behind the CI's vehicle, and law enforcement initiated a traffic stop on Hernandez for a seatbelt violation. See id. ¶¶ 13–14. A police canine dog alerted to narcotics in Hernandez's vehicle. See id. Upon searching, law enforcement found a duffel bag with 2.24 kilograms of pure methamphetamine and three firearms (an AR-15 rifle and two .45 caliber handguns). See id. Additionally, one of Hernandez's co-conspirators later told investigators that Hernandez was also accountable for 6 kilograms of crystal methamphetamine that Hernandez delivered to the wrong house around April 2016. See id. ¶ 23.

10

Hernandez's criminal conduct was nothing new. Hernandez's criminal history dates back to 2012 and includes drug offenses and violence. See id. ¶¶ 31–33. Hernandez has a felony conviction for discharging a weapon into an occupied property and misdemeanor convictions for communicating threats, resisting a public officer, and simple possession of a controlled substance. See id.

Hernandez has taken some positive steps while federally incarcerated. Hernandez earned his GED, "completed a mul[t]itude of rehabilitation/education programs," dropped out of SUR-13, and allegedly assisted in a federal investigation. See [D.E. 223] 4, 7. But Hernandez has incurred 12 infractions since entering federal custody—the most recent of which occurred five months ago. See [D.E. 228-3]. Thus, Hernandez's commitment to lawless conduct continues apace and overshadows his positive efforts in custody.

The court has also considered Hernandez's argument concerning his recidivism risk. See [D.E. 223] 4–5. But the court finds that Hernandez's lower recidivism risk does not outweigh the serious criminal conduct and continued infractions incurred during Hernandez's federal incarceration.

Having considered the entire record, the section 3553(a) factors, Hernandez's arguments, and the need to punish Hernandez for his serious criminal behavior, to incapacitate Hernandez, to promote respect for the law, to deter others, and to protect society, the court denies Hernandez's motion for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Washington, 161 F.4th at 818; United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992

F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for a compassionate release [D.E. 223].

SO ORDERED. This 20 day of April, 2026.

JAMES C. DEVER III
United States District Judge

12